UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAMIE LYNN BRITT,

       Plaintiff,

  v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

19-CV-6451-LJV
DECISION & ORDER

---

On June 21, 2019, the plaintiff, Jamie Lynn Britt, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On November 18, 2019, Britt moved for judgment on the pleadings, Docket Item 9; on January 17, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 10; and on February 7, 2020, Britt replied, Docket Item 11.

For the reasons stated below, this Court grants Britt's motion in part and denies the Commissioner's cross-motion.[1]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first

---

[1] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I.   ALLEGATIONS

Britt argues that the ALJ erred in three ways. Docket Item 1. She first argues that the ALJ improperly rejected the opinion of her treating physician, Robert Zukas, M.D. *Id.* at 1. She next argues that the ALJ improperly evaluated other opinion evidence in the record. *Id.* And she finally argues that the ALJ failed to account for limitations stemming from her non-severe impairments. *Id.* This Court agrees that the ALJ erred and therefore remands the matter to the Commissioner for proper consideration of Dr. Zukas's opinion.

**II.     TREATING PHYSICIAN RULE**

When determining a claimant's residual functional capacity ("RFC"), an ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). But an ALJ generally should give greater weight to the medical opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with the claimant—because those medical professionals are in the best positions to provide "detailed, longitudinal picture[s] of [the claimant's] medical impairments." *See* 20 C.F.R. § 404.1527(a)(2), (c)(2); *see also Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order). In fact, a treating physician's opinion is entitled to controlling weight so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2).

Before an ALJ may give less-than-controlling weight to a treating source's opinion, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[ ] (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quotations and alterations omitted). These are the so-called "*Burgess* factors" from *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating source opinion "is a procedural error." *Id.* at 96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).

Here, Dr. Zukas—Britt's primary care provider—opined, among other things, that Britt can "sit or stand for fifteen minutes at a time; and sit or stand less than two hours each during a workday."  Docket Item 7-2 at 57.  He added "that every thirty minutes [Britt] must walk for five minutes, and [she] will require a fifteen-minute rest break each hour but would not require an assistive device to walk."  *Id.*  And he "further opined that [Britt] can lift ten pounds only rarely; can never look down, twist, stoop, crouch, or climb ladders; can rarely climb stairs, turn her head, look up, or hold her head steady; and would miss more than five days of work a month."  *Id.*

The ALJ assigned "limited weight" to Dr. Zukas's opinion, explaining that "[w]hile Dr. Zukas is a primary care provider, he noted that he had only treated [Britt] for four months at the time of this opinion."  *Id.*  In the ALJ's view, this "diminish[ed] any deference due to [Dr. Zukas's] opinion as a treating source."  *Id.*  The ALJ further explained:

> Dr. Zukas's records do suggest some muscle spasm over the spine supporting limitations including ability to lift and carry only ten pounds.  However, findings of normal range of motion, strength and sensation despite bony tenderness are inconsistent with Dr. Zukas's opinion that the claimant can only lift any weights rarely and can never stoop or crouch.  Similarly, [the] examination [of consulting examiner Harbinder Toor, M.D.,] showing normal gait despite difficulty walking on heels and toes is inconsistent with [the] inability to stand or walk for two hours.

*Id.* at 57-58 (internal citations omitted).  The ALJ instead found that Britt has the RFC to

> perform sedentary work . . . except that [she] can lift and carry, push and pull ten pounds occasionally; can stand and walk for two hours of an eight[-]hour day; and can sit for six hours of an eight-hour day.  [Britt] can occasionally crouch, stoop, climb ramps and stairs, kneel, and balance; and can never crawl or climb ladders ropes, or scaffolds.

4

*Id.* at 54.

The ALJ failed to "explicitly" consider several of the Burgess factors before assigning "limited weight" to Dr. Zukas's opinion. For example, although the ALJ considered the length of time that Dr. Zukas treated Britt—four months at the time when Dr. Zukas rendered his opinion—he failed to "explicitly" consider "the frequency, . . . nature, and extent of [Dr. Britt's] treatment." *See Greek*, 802 F.3d at 375. Dr. Zukas saw Britt *five times* during that four-month period. *See* Docket Item 9-1 at 15. All told, Dr. Zukas saw Britt nine times over six months. *See* Docket Item 7-10 at 42, 65, 86, 107, 130, 154, 398, 421, and 444. But the ALJ does not appear to have taken the number of visits or their frequency into account.

What is more, as explained above, the ALJ concluded that the fact that Dr. Zukas had treated Britt for only four months when he rendered his opinion "diminish[ed] any deference due to his opinion as a treating source." Docket Item 7-2 at 57. But as Britt observes, "[t]wo personal visits have been found to meet the frequency requirement of 20 CFR § 404.1502 and § 416.902 to be considered a treating source." Docket Item 9-1 at 15 (quoting *Alazawi v. Comm'r of Soc. Sec.*, No. 18-cv-00633, 2019 WL 4183910, *3 (W.D.N.Y. Sept. 3, 2019)). The ALJ failed to give any other reason why Dr. Zukas's opinion was not entitled to deference despite his frequent treatment of Britt over several months. *See* Docket Item 7-2 at 57. And that is particularly troubling given that the ALJ discounted Dr. Zukas's opinion in part because it was supposedly inconsistent with the

5

opinion of Dr. Toor—who did not have a treating relationship with Britt and examined her only once.

The ALJ also did not explicitly address "the amount of medical evidence supporting the opinion." *See Greek*, 802 F.3d at 375.  Although the ALJ noted in passing that "Dr. Zukas's records do suggest some muscle spasm over the spine supporting limitations including ability to lift and carry only ten pounds," Docket Item 7-2 at 57, the ALJ did not address whether other evidence in the record supported Dr. Zukas's opinions about Britt's functional capacity.

"Because the ALJ procedurally erred, the question becomes whether 'a searching review of the record assures [this Court] that the substance of the [treating-physician] rule was not traversed'—*i.e.*, whether the record otherwise provides 'good reasons' for assigning '[limited] weight'" to Dr. Zukas's opinion.  *See Estrella*, 925 F.3d at 96 (alterations omitted) (quoting *Halloran*, 362 F.3d at 32); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining remand where "application of the correct legal principles to the record could lead [only to the same] conclusion").  The Court finds no such assurance here.

First, as explained above, the ALJ discounted Dr. Zukas's opinion in part because "Dr. Toor's examination showing normal gait despite difficulty walking on heels and toes is inconsistent with [the] inability to stand or walk for two hours." Docket Item 7-2 at 58.  But it is not at all clear how a "showing a normal gait" in a short examination would say anything about Britt's ability to stand or walk for *two hours.*  On the contrary, Dr. Toor opined that Britt "has *moderate to marked* limitation[s] in standing, walking,

6

bending, lifting, and carrying," *id.* at 57 (emphasis added), which seems entirely *consistent* with Dr. Zukas's opinion that Britt could walk for less than two hours.

Moreover, both Dr. Zukas and Dr. Toor expressed significant concern about Britt's ability to sit for long periods of time. More specifically, Dr. Toor explicitly found that Britt was moderately limited "in sitting a long time"; along the same lines, Dr. Zukas found that Britt could sit for only "fifteen minutes at a time" and "less than two hours . . . during a workday." *Id.* But without explaining why, the ALJ found that Britt could "sit for *six hours* out of an eight-hour work day." *Id.* at 54 (emphasis added).

The ALJ appears to have relied on Britt's orthopedist, Chibuikem Akamnonu, M.D., for that conclusion. *See id.* at 57 (according "significant weight" to Dr. Akamnonu's opinion). Dr. Akamanonu stated the following:

> [Britt] understands that I do not complete Social Security disability forms however she has had multiple procedures performed for her cervical and lumbar spine as well as [a] recent foot procedure performed. She is only most likely suited for light duty or sedentary type work which I explained to her.

Docket Item 7-10 at 257. But for three reasons, that opinion could not provide a basis for the ALJ's specific conclusion that Britt could sit for six hours a day. First, as the ALJ noted, Dr. Akamnonu opined on an issue reserved for the Commissioner. *See* Docket Item 7-2 at 57; *see also Deubell v. Comm'r of Soc. Sec.*, No. 18-CV-935 HBS, 2019 WL 5781860, at *4 (W.D.N.Y. Nov. 6, 2019) ("To the extent that any of the treatment providers cited by the ALJ attempted to comment on whether [the] plaintiff was 'disabled' or able to work, the ALJ properly discounted those providers as opining on an ultimate issue reserved for the Commissioner."). Second, it is not clear what Dr. Akamnonu meant by "light duty" and "sedentary-type" work; these are terms of art in the

7

Social Security context, but Dr. Akamnonu explicitly stated that he "do[es] not complete Social Security disability forms." Docket Item 7-10 at 257; *cf. Aragon-Lemus v. Barnhart*, 280 F. Supp. 2d 62, 69 (W.D.N.Y. 2003) ("[I]t is unclear exactly what the term 'sedentary light job' actually means; it is certainly not among the categories contained in the regulations."). Third, Dr. Akamnonu's opinion that Britt was "only *most likely* suited for light duty or sedentary type work," Docket Item 7-10 at 257 (emphasis added), is "not without qualification." *See Aragon-Lemus*, 280 F. Supp. 2d at 69 (explaining that where ALJ rejected treating physician's opinion based on another opinion that the claimant "was '*probably* only suited for a sedentary light job' . . . , one would desire a less equivocal statement on which to base the decision" (emphasis in original)).[2]

Finally, even apart from the opinion on how long Britt could sit, stand, and walk, the ALJ's error was far from harmless: Indeed, had the ALJ credited Dr. Zukas's opinion, he would have found Britt to be disabled. For example, Dr. Zukas opined that Britt would need "a fifteen-minute rest break each hour," Docket Item 7-2 at 57, but the vocational expert ("VE") testified that "if she required these breaks . . . she would not be able to sustain competitive employment," *id.* at 111. Likewise, Dr. Zukas opined that Britt "would miss more than five days of work per month of work," *id.* at 57, but the VE testified that an individual who missed an average of two days per month every month would be unemployable, *id.* at 107-08. Finally, Dr. Zukas opined that Britt "can never

---

[2] The ALJ could have contacted, but apparently did not contact, Dr. Akamnonu to clarify the opinion. *See Anderson v. Colvin*, No. 5:12-CV-1008 GLS/ESH, 2013 WL 5939665, at *9 (N.D.N.Y. Nov. 5, 2013) ("[U]se of imprecise and nebulous terms regarding functional limitations raises a red flag. In such circumstances, administrative law judges following best practices might well be advised to recontact such examiners routinely for clarification.").

8

look down" and can only rarely "turn her head, look up, or hold her head steady," *id.* at 57, but according the VE, an individual who was "only occasionally able to rotate, flex, extend[,] or maintain her neck in a fixed position . . . would not be able to perform any work in the national economy," *id.* at 108-09.

For all those reasons, this Court remands the matter for reconsideration of Dr. Zukas's opinion.[3]

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 10, is DENIED, and Britt's motion for judgment on the pleadings, 9, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:   August 27, 2020
         Buffalo, New York

                                       */s/ Lawrence J. Vilardo*
                                       LAWRENCE J. VILARDO
                                       UNITED STATES DISTRICT JUDGE

---

[3] The Court "will not reach the remaining issues raised by [Britt] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made.").